Good morning, Your Honors. May it please the Court, my name is Mary Ann Dugan and I represent the appellant, Mr. Robert Oja. This case involves a man who worked for the Army Corps of Engineers for 13 years. He was the Chief of Enforcement for Alaska. He was a whistleblower. He then filed, he went on medical leave. He was relieved of his duties and he sued and settled in the MSPB, the Merit Systems Protection Board. A year after that, the Washington Post did a series of articles, an expose of the regularities in the Army Corps of Engineers and they did a piece about Mr. Oja. And that same month, the Army Corps of Engineers disclosed personal medical information about Mr. Oja on the Internet, on its website. That was in September of 2000. Mr. Oja found the postings and he continued to visit the website until November 27th of 2000 when the postings appeared to disappear. It turned out they had actually changed to another part of the website. He sued less than two years after that last time he saw the posting on the first part of the website. He sued November 5th of 2002 under the Privacy Act. The court, the District of Oregon court threw out this case arguing that the two-year statute of limitations began on, in September of 2000 when the information was first posted. I'd like first to address the National Railroad case because it appears to be important to the resolution of this issue, but I would argue that it is not. In that case, the Supreme Court held that the continuing violation theory, which had been formally applied in many cases, that that theory in the Title VII employment context applies only to hostile work environment cases. In National Railroad, the plaintiff was allowed, therefore, to seek damages only for the more recent discreet discriminatory acts and only was allowed to use the prior acts as evidence, whereas under prior case law, plaintiffs could bring a continuing violation theory under Title VII. Counsel, isn't the question here how we characterize information that is posted on the Internet and whether we treat it as similar to a posting on a bulletin board or the release of a newspaper under the single publication rule or whether this is more akin to when you access the website to calling up the FBI and me asking for personal information on what the FBI has in your file? Yes, Your Honor, I agree, and so my point is that National Railroad really doesn't answer the question that needs to be answered here. Tell us what you think the answer is. Which is that the question is, were these postings discreet acts? Now, the single publication rule, of course, has so far only explicitly been applied to the defamation context in most case law. It really hasn't been applied to the Privacy Act, which is a whole separate issue which I've addressed in the briefs. But let's assume that this case is akin to a defamation lawsuit for purposes of that argument. The single publication rule is an exception to the general rule that every time there's a disclosure that violates the law or in that case defamation is defamation, that every time there would be a new tort and a new statute of limitations. The single publication rule is an exception to that that holds that for books and broadcasts and other aggregate publications of information to a group of people, and this is briefed on page 17 and 18 of the opening brief, that in that case there's only going to be deemed one publication. And the main focus of the case law being that, for example, a book, when it's published and it gets disseminated and distributed and ends up on people's shelves, it's virtually impossible for the publisher to go and get all of those things back and to withdraw the disclosure. Well, it may or may not be. As I understand the single publication rule, you know, if the books are sitting in this warehouse, it doesn't matter. Well, but the – for example, if I lend that book to my friend, I haven't. What I'm saying is that nothing turns on whether the – in a particular instance the book has been distributed or not, right? It doesn't turn on that, but that is one of the issues that has been raised in the case laws as a reason for the single publication rule. Now, the single publication rule does not apply to sequential, identical repeats of, for example, a news article or a broadcast. And that's briefed on page 17 to 18. But each of those is volitional in some way. If I'm publishing a newspaper and I publish something defamatory about Mr. Oya, and then I pick it up and I repeat it the next week, and I keep repeating it. Every time I refer to Mr. Oya, I continue to repeat this defamatory statement. Each one of those is a separate publication. But it's a single publication as to the issue or the article that I originally issued, right? Why is this different when you were – when we talk – even in the vernacular that we use with respect to the Internet, we talk about posting or putting it on a bulletin board. So why isn't that – why isn't that covered by the single publication rule? Well, once a person giving a speech in front of an audience or on the radio has opened their mouth and spoken, the deed is done. And the fact that there's a whole group of people that hear it, the fact that each of those people may go and repeat that does not change the nature of the disclosure. The – this is much more analogous to repeats of a broadcast. If the publisher says at the beginning of the day, yeah, let's pick this story as our lead story, let's run it in all editions of the paper. The publisher has made that one decision, but it has ended up in multiple. But the – I'm not sure why any of this matters, but the person who – in this instance, the person who posts it, posts it and leaves it there, nobody ever does anything else. It just sits there. So if you're going to draw a distinction, it has to be for one of two reasons. Either because it's relatively easy to take it off after you've put it on, but not because you have taken it off and done another act. Or because there's something about the way the listener interacts with it that is different. And that seems hard because, for example, if you had a book in a library and, you know, every day somebody else opens the book in the library, that doesn't seem very different than every day somebody, you know, logging onto a website. So that doesn't seem to me to work. Are you relying on that theory? Well, to start with the last analogy, the library was not the publisher of the book. If the publisher has in its warehouse a stack of books, they still have the power to withdraw the book. But that is not the usual way that books get disseminated. If the person making a broadcast has not yet finished the last of the broadcast, they still have the power to stop. Here, I'm relying on several different issues. One is that the exception, and to recall that it's an exception to the general rule, is focused on the fact that it is a single group, an aggregate disclosure, all at one time at the beginning. And the news article that's republished later in the day goes to a new group. And that's the word that the restatement uses. And the restatement makes clear that that has been the focus of the case law. This situation is much more like malice, M-A-L-L-A-S, which is briefed in our reply at page two, where 33 letters, identical letters, were sent out by the IRS. And each one was a violation of the rules against such disclosure. Even though they were identical rules, and they might have even been printed at the same time on a printer, each one was a separate disclosure. The language of the Privacy Act also supports the fact that this is an actual act. I'll get to that in a second. I just wanted to talk about... But that wasn't a Statute of Limitations Act case, right? It wasn't. It was an issue of how many damages there were. But the point being that each one was its own cause of action. And here, each disclosure should be its own cause of action. The Privacy Act states... The act of disclosure being what? Being that the Web site is not disclosing information until somebody actually looks at it. You know, somebody goes to the Web site and clicks on a button that has been placed there by the Army Corps, saying, give me this piece of information. I just read the Washington Post article, and I want to know more. It brings them right to this private personal information about Mr. Oya about his medical condition. That is the act of disclosure when the visitor to the Web site clicks on... That's a very odd act of disclosure because the person doing the disclosure isn't doing anything. Well, but they have the power to stop it. They have the power at any time... That's different. Well, I don't think it is different because this is not... Wouldn't the parallel be that, following your argument, that a publication in a newspaper wouldn't really be a publication, though? Somebody reads in it. Well, but it's distributed actively to a specific area, a group of people. You take a pile of newspapers and you put them in a street box. Two things. Is there a cause of action every time somebody takes something out of the box? Not under the single publication rule because... Is there a cause of action on every individual day because as long as there is anything left in the box, a publisher can come and take it back? No, because the newspaper acts in a certain specific way, which is that every day they come out with at least one different new edition. And if their new edition... Well, I'm positing a weekly paper. Okay. I mean, I think that given... And I see I'm out of time and I'll just... Why don't you just finish this. Go ahead. Wrap up. That under the defendant's theory and under the court below's theory, a defendant could post indefinitely the prohibited information after two years passes or after one year for defamation in Oregon. And that, there is something wrong with that. And now something has to be said... Well, as a statute of limitations problem, if he hadn't discovered it yet and couldn't have or there isn't some reason to think he should have, he wouldn't have had the problem. The reason he has this problem is because he knew about it the whole time also. Well, and of course, there is the alternative argument that he did not know about the intentional nature of it, so he did not actually have a cause of action, which we agree. Thank you. Thank you very much. We'll give you a minute and we'll go. Good morning. I'm Jim Sutherland. I'm an assistant United States attorney from Eugene. Let me try to answer the court's question regarding what the nature of the action is and whether it's continuing or something other than this disclosure. The statute says that what's being penalized, and I'm using the words from the Miller case, what's being penalized is disclosure. In the Miller case and the other case I cited, it was disclosure of IRS tax return information, but if you look at the wording of both the tax return disclosure statute and the Privacy Act disclosure, they use essentially the same term. If the wrong is the disclosure, that's when the statute, that's when the cause of action approves. The statute of limitations and the Privacy Act talks about the approval of the cause of action. In the Miller case, this court specifically rejected the malice case that Plante relies upon and said it's part of the reason that we reject the malice case is that in this world where we have Internet postings, that would be an unbearable burden. And it recognized that what the statute is trying to prohibit is the unauthorized disclosure. Now, if you want to apply the more traditional common law rules, then you get to the single publication rule, and it's our position that what happened in this case, that is the decision to post on the Internet falls right in within the two exceptions in the restatement towards 55-7A. The first exception is paragraph 2, and this is on page 21 of my brief where I set forth the restatement, is a single communication heard at the same time by two or more third persons in a single publication. That's one of the exceptions. This is a single publication. It's a single posting. You can have multiple people hear it. The other exception is when one edition of a book, newspaper, or any radio or television broadcast, exhibit of motion picture or similar aggregate communication is a single publication. This was written before the Internet became well known, but it seems to me that as easily you could have added an Internet posting. I think that the court was correct in distinguishing those type of cases which requires you to go back and obtain information, probably have a password, and retrieve it. And that's not this case. This is an open publication. All this information is available. It doesn't require a password. It doesn't require any action between the person requesting the information or viewing it and the person disclosing it. Can you tell me why that matters? I'm having a hard time with this. I don't think it matters. But that's one of the... The Tennessee case is the case from the Court of Appeals in Tennessee is the one that talked about that. I've cited in the brief a number of federal cases or district court opinions that have seemingly rejected that rule. In my view, I don't think it makes any difference. And I don't think it makes any difference because the statute in this case talks about the disclosure, not about the dissemination. I would like to address one other point, and that's the TRO versus Andrews case. In that case, the statute of limitation under the Fair Credit Reporting Act is very similar to the statute of limitation in the Privacy Act. The first wording talks about agency as opposed to the defendant. The Fair Credit Reporting Act talks about liability, and the Privacy Act uses the word cause of action. But other than that, the first sentence is nearly identical. The second sentence, though, is identical and in construing the second clause, which is the exception, the Supreme Court said that when Congress provides for a limited exception, that the discovery rule is no longer applicable. And so I would suggest in this case that given the Court's reasoning in TRW versus Andrews that the interpretation of the statute of limitation of the Privacy Act in Rose is no longer good law. And those conclude my remarks unless the Court has any specific questions. I can address Morgan and RV eventually if the Court wishes, but I sense the Court's not interested in that. So it's not because – so therefore your position would be that it didn't matter when he read it or when he discovered it. Because Congress has specifically provided for a statute of limitation with a very limited exception, and that statute of limitation starts when it's published. Where is your brief? Is the language of the statute of limitations here? Do you know? I can direct the Court to the opinion in the TRW which has a statute of limitation. I will tell the Court – I wish you would. We have this very mealy-mouthed rule about including statutes. But I wish you would always stick to that. I apologize. I will tell the Court that the Fair Credit Reporting Act statute of limitation apparently was amended in 2003, and it's no longer the same language. Thank you. Thank you. On page 15 of our brief, we talk about – we quote the statute of limitations for the Privacy Act, which states that the suit must be brought within two years from the date on which the cause of action arises. If the Court does not – if the Court agrees with the lower court that the single publication rule applies, we would urge the Court to find that the cause of action did not accrue then until Mr. Oya knew that there was a willful violation. That was when he actually had a cause of action, and that was in October of 2001. In the alternative, Your Honors, the relation back issue requires some attention if the Court is going to agree with the lower court on the single publication rule. We amended the complaint in May of 2003 to add the information that the website had – information that had actually been moved, which is certainly an affirmative act, and nobody has ever questioned that. The question has been whether that amendment related back to the initial filing. Given the nature of notice pleading – Do you have the original website address as counsel? Yes. It's in the complaint itself. The website is spelled out in – I've been prepared to – For both publications? Well, Mr. Oya – It's the page. Do you know whether the page is reproduced anyplace in the record? It's the page reproduced. The – actually, in the second case, it might be reproduced. But in the first case that we're dealing with today, the paragraph 15, I believe – or, I'm sorry, paragraph 6 gives the website, and then – the initial website. And then Mr. Oya's declaration explains what he recalls as far as how he located the second website, which is – Was there a second website? I thought, actually, it wasn't just separately. It was a second area on the same Corps website. But it's still within the public affairs. Yes. So even though you were going to the Army Corps, you were going to the general Army Corps of Engineers website. You had to go to the public affairs website to find what you contend are two different postings. But it was all within a single office in the larger subset of the Army Corps of Engineers. It wasn't posted one place in the Alaska section and one place on the – Right. But – right. Correct. And somebody, at some point in November or December, made the affirmative act of taking it, the link, from one place and moving it to another place. Are you confident it wasn't there in the first place, that you just didn't discover it? Do you know that? We don't have any evidence to that effect. It's all been somewhat mysterious, trying to track down the information. But in any event, I mean, you have this very peculiar problem because if it's a separate cause of action, then it appears that it doesn't relate back because it's a different transaction. Whereas if it's the same cause of action, then you have the limitations period. So how do you deal with that? Well, you know, and I think that given notice pleading, that the Corps was in a unique position to know what exactly it had done and when it did it and who did it and where this information ended up. When the Corps received the complaint, given the nature of notice pleading, they were certainly on notice that they should look into what exactly they had done as far as this web posting. The cases cited by the defendant regarding relation back relate to two separate accidents, a change in the actual nature of the cause of action, a different type of claim. But you're trying to take advantage of the fact that it's separate. That's what's so odd about it. If it isn't separate, it's not going to do you any good. Well, I don't know that we're trying to take advantage. I don't mean advantage in a bad sense, but I mean you are relying on the fact that this is something different than the first time. If it wasn't something different than the first time, it wouldn't help you. Well, that's true, yes. And I think that the question of what is different for purposes of the single publication rule and the question of what is different for purposes of relation back are not necessarily overlapping. The case law doesn't address those things in similar terms. Relation back has a lot of equitable language in the case law regarding what should be allowed and what shouldn't be allowed, as does the notice pleading case law. Okay. Thank you very much. The case is submitted, and we will go on to the second case of OEI versus the United States Army Corps of Engineers. Thank you. Thank you.
judges: Hug, Berzon, Bybee